**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KEVIN A. TOLLIVER,**

    **Plaintiff,**

  v.                                        **Civil Action 2:16-cv-1020
Judge Edmund A. Sargus
Magistrate Judge Jolson**

**WARDEN NOBLE, et al.,**

    **Defendants.**

**REPORT AND RECOMMENDATION AND ORDER**

This matter is before the Court on Defendants Noble's, Jefferies', Cahill's, Taylor's, Moore's, Lawrence's, Davis', and Hunyadi's Motion for Judgment on the Pleadings (Doc. 79). For the following reasons, it is **RECOMMENDED** that the Motion be **GRANTED**. Further, within 14 days of this Report and Recommendation and Order, Plaintiff is **ORDERED** to show cause why this case should not be dismissed with respect to Defendants Abdul Rahman Shahid and Sunni Ali Islam.

**I.    BACKGROUND**

Plaintiff is an inmate at Grafton Correctional Institution, who has previously been incarcerated at London Correction Institution ("LoCI"), Madison Correctional Institution ("MaCI"), Belmont Correctional Institution ("BeCI"), Ross Correctional Institution ("RCI"), and Pickaway Correctional Institution ("PCI"). (Doc. 30, ¶ 7). Defendants are numerous Ohio Department of Rehabilitation and Corrections ("ODRC") employees and contractors. (*Id.*, ¶¶ 8–11).

In 2012, ODRC transferred Plaintiff to MaCI. (*Id.*, ¶ 16). While at MaCI, Defendant Abdul Rahman Shahid was an ODRC contractor who served as an Islamic Services Provider. (*Id.*, ¶ 19).

Defendant Sunni Ali Islam served in the same role at PCI. (*Id.*). Plaintiff alleges that Defendants Shahid and Islam (the "Defendant Contractors") generally discriminated against Muslim inmates that were not supporters of the Nation of Islam. (*See, e.g.*, *id.*, ¶¶ 19–30). While at MaCI, Plaintiff allegedly complained to unidentified ODRC administrators and staff about the Defendant Contractors' behavior, which he asserts resulted in retaliation in the form of denied grievances, denied medical treatment, and limited program opportunities. (*Id.*, ¶ 35).

After several years at MaCI, in 2016, ODRC transferred Plaintiff to LoCI "for programming consistent with his parole board and re-entry plan." (*Id.*, ¶ 40). Defendant Shahid served as the Islamic Services Provider at LoCI as well. (*Id.*, ¶ 43). According to Plaintiff, unidentified ODRC administrators and employees employed Defendant Contractors knowing that it would suppress Muslim inmates' religious exercise and conserve resources for Christian inmates. (*Id.*, ¶ 50). And Plaintiff takes issue with ODRC's policies which he maintains do not adequately distinguish between different sects of Islam, resulting in the discriminatory actions of Defendant Contractors. (*Id.*, ¶¶ 54–57).

In September 2016, Defendants Christler and Sibalski "shook down Plaintiff" and conducted a search of Plaintiff's belongings. (*Id.*, ¶ 88). Plaintiff subsequently reported to the investigators who placed him in segregated housing. (*Id.*, ¶ 90). After two weeks in "maximum security isolation," Defendant Sibalski informed Plaintiff of the results of his investigation. (*Id.*, ¶ 90). The investigation began based on Defendant Shahid's allegation that Plaintiff was trying to radicalize other Muslim inmates; Defendant Sibalski found no evidence to support that allegation. (*Id.*). Plaintiff alleges that unidentified Defendants subjected him to more than 50 days "in isolation as punishment for his use of the grievance process." (*Id.*, ¶ 94). Defendant Jefferies allegedly "personally approved this retaliatory action." (*Id.*).

The next month, unidentified Defendants allegedly arranged Plaintiff's transfer to PCI to impose "additional hardships" on Plaintiff, knowing that Defendant Islam worked at PCI and would continue to harass Plaintiff as Defendant Shahid had. (*Id.*, ¶ 99). Defendants Jefferies, Noble, and Taylor "and others had great sway over" Defendant Contractor's false reports and their effect on Plaintiff. (*Id.*, ¶ 102). Unidentified Defendants have allegedly denied him a reduction in his security level due to his history of successful grievances challenging his conditions of confinement and violations of civil rights. (*Id.*, ¶ 107).

As part of their alleged retaliation against him, unidentified Defendants confiscated Plaintiff's legal materials and limited his access to other legal materials. (*Id.*, ¶¶ 115–19). Unidentified Defendants also failed to process his theft reports after Plaintiff lost other personal property. (*Id.*, ¶ 120). Further, unidentified Defendants disrupted his completion of various prison programming by transferring him between facilities. (*Id.*, ¶¶ 126–30).

Plaintiff filed the initial Complaint (Doc. 1) in October 2016. After the Court ordered that the Complaint be dismissed, (Docs. 14, 17), the Sixth Circuit directed it to permit Plaintiff to file an Amended Complaint, (Doc. 24). Plaintiff promptly filed his Amended Complaint, alleging that Defendants: retaliated against him in violation of the First Amendment, violated his right to practice his religion, denied him access to the courts, and are liable for numerous state law contract and tort claims. (*See generally* Doc. 30). Defendants Noble, Jefferies, Cahill, Taylor, Moore, Lawrence, Davis, and Hunyadi (the "ODRC Defendants") filed a Motion for Judgment on the Pleadings (Doc. 79). The Motion is fully briefed and ripe for resolution.

## II.   STANDARD

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ.

P. 12(c). "Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law." *Williamson v. Recovery Ltd. P'ship,* No. 2:06-CV-292, 2010 WL 3769136, at *2 (S.D. Ohio Sept. 24, 2010) (citations omitted).

In examining a motion for judgment on the pleadings under Rule 12(c), the Court uses the same standard of review applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Mixon v. State of Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999). Accordingly, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). To survive a motion for judgment on the pleadings, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop*, 520 F.3d at 519 (internal quotation marks omitted). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. DISCUSSION

The ODRC Defendants moves for judgment on the pleadings on several grounds: (1) Plaintiff has failed to allege their personal involvement in any alleged unconstitutional behavior; (2) Plaintiff's retaliation claim fails because he has not alleged a causal connection between his protected conduct and any alleged adverse action; (3) Plaintiff has not demonstrated an injury to support his access to the courts claim; (4) Defendants are entitled to sovereign immunity in their official capacity and qualified immunity in their individual capacity; and (5)

Plaintiff's state law claims are undeveloped and, in any event, barred by sovereign immunity.

### A. Sovereign Immunity – Federal Claims

"State sovereign immunity generally bars damages actions against states from proceeding in federal court. This immunity also generally applies to state agents and instrumentalities, including state officials sued in their official capacities." *Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) (internal citations and quotations omitted). To the extent Plaintiff sues the ODRC Defendants in their official capacities for monetary damages, state sovereign immunity bars those claims. But "[t]he Supreme Court recognizes an exception to [the state sovereign immunity] rule if an official-capacity suit seeks only prospective injunctive or declaratory relief." *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). Plaintiff appears to seek prospective injunctive and declaratory relief here, (*see* Doc. 30, ¶ 139, 141–43), and those official capacity claims are not barred as a result.

### B. Sovereign Immunity - State Law Claims

At the end of the Amended Complaint, Plaintiff offers the conclusory statement that Defendants' actions establish liability for "torts; Liable [sic], Slander, Malicious Prosecution, Intentional Infliction of Emotional Distress, Defamation, and False Imprisonment." (Doc. 30, ¶¶ 137–38). But, as the ODRC Defendants note, (Doc. 79 at 19), the doctrine of sovereign immunity bars the prosecution of state law claims against the State in federal court. *See Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc) (citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)) ("And because the purposes of *Ex parte Young* do not apply to a lawsuit designed to bring a State into compliance with state law, the States' constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether

5

those claims are monetary or injunctive in nature."). And Plaintiff has not addressed this argument in response. Even assuming Plaintiff had not waived his state law claims against the ODRC Defendants, they are barred by the doctrine of sovereign immunity.

### C. Defendants' Lack of Personal Involvement

Plaintiff's claims against the ODRC Defendants fail for a more fundamental reason: Plaintiff has failed to allege individual misconduct on the part of any of the ODRC Defendants.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff failed to comply with that requirement here. Instead, he refers to various unidentified Defendants in general terms, implying that they are all liable for the actions of one another. The closest Plaintiff comes to alleging that individual Defendants violated the Constitution based on their own individual actions is when he asserts that Defendant Jefferies allegedly "personally approved" his detention "in isolation as punishment for his use of the grievance process." (*Id.*, ¶ 94). But even this allegation is an impermissible legal conclusion that is insufficient for purposes of Rule 12(c). *See Twombly*, 550 U.S. at 570. So the ODRC Defendants are entitled to judgment on the pleadings here. *See Iqbal*, 556 U.S. at 676.

Although Plaintiff disagrees, (*see* Doc. 84 at 5–8), his Response confirms as much.[1] According to him, he has "explained the unconstitutional conduct and then either specifically stated the individual involved or otherwise referred to them by 'ODRC Administrators and Staff' or other such generalized terms as employee, chaplain, warden, etc." (*Id.* at 6). This an accurate

---

[1] Plaintiff concedes that there he has not pled a claim against Defendants Hunyadi or Lawrence in the Amended Complaint. (*See* Doc. 84 at 5).

description of Plaintiff's Amended Complaint. The only Defendants he identified and alleged specific facts demonstrating that they engaged in alleged misconduct are the Defendant Contractors and Defendants Christler and Sibalski. They, of course, have not moved for judgment on pleadings. But the remaining Defendants have, and for good reason. Plaintiff's use of "generalized terms" and legal conclusions couched as factual allegations are insufficient to establish individual misconduct on the part of the ODRC Defendants. *See Iqbal*, 556 U.S. at 676.

Plaintiff's attempt to use his Response to fill in gaps in the Amended Complaint is similarly ineffective. (*See* Doc. 84 at 6–7). The Amended Complaint, not Plaintiff's Response, controls for purposes of ruling on the Motion. Any new allegations in his Response are, therefore, of no help to him here.

In Plaintiff's view, he has provided sufficient allegations to demonstrate that his claims "are plausible" and "to raise a reasonable expectation that discovery will reveal evidence of … individual levels of personal involvement in the constitutional violations." (Doc. 84 at 8). Even assuming that Plaintiff's claims were plausible, Plaintiff has failed to comply with the fundamental requirement that he "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676. The ODRC Defendants are entitled to judgment on the pleadings as a result.

The only remaining issue is whether Plaintiff should be permitted another attempt at amending his complaint. (Doc. 84 at 3 ("[P]laintiff maintains that if this court finds that he has failed to sufficiently detail the involvement of the individuals being requested for dismissal under Rule 12(c), then it is requested upon the arguments that follow, the court permit to amend the complaint with those details elaborated upon herein.")). A number of factors weigh against permitting Plaintiff to amend the complaint. This case has been pending for almost four years,

7

and, while it may be appropriate to permit a *pro se* plaintiff an opportunity to amend his complaint before dismissing it, *see Brevaldo v. Muskingum Cty. Sheriff's Office*, No. 2:18-CV-446, 2018 WL 5808761, at *5 (S.D. Ohio Nov. 6, 2018), *report and recommendation adopted*, No. 2:18-CV-446, 2018 WL 6199008 (S.D. Ohio Nov. 28, 2018) (collecting cases), Plaintiff has already had that chance here, (*see generally* Doc. 30).  Further, the additional details provided by Plaintiff in his Response do not suggest that further amendment would cure the fundamental deficiency in the Amended Complaint; instead, Plaintiff offers more of the same—allegations of general misconduct on the part of Defendants combined with ineffective legal conclusions couched as factual allegations.  (*See, e.g.*, Doc. 84 at 6 (internal quotation marks and ellipsis omitted) ("Defendants' use of Nexus to transfer him, infers at least the warden and/or dept. warden (Noble and Taylor) and it would have been filled out and filed by some staff member alleging a personal relationship to plaintiff."); *id.* ("[I]t is clear there is a history between Jefferys and Tolliver. Because of an ODRC policy … which obligates the regional director (in this case Jefferys) to approve of every inmate segregation after each 14 day period.  Jefferys would have signed off by policy on plaintiff's segregation no less than three (3) times.  The court should note here, that is three (3) times after the investigator determined that a false report had been filed."); *id.* at 7 ("It is either Dept. Warden Moor or Chaplain Cahill that are responsible for the hiring, or maintaining after his dismissal from MaCI and offenses at LoCI, the contractor.  The errant policy that allows this is administered by Dr. Davis, who ultimately approves these contracts.  He is directly implicated by inference as Religious Services Administrator, along with Regional Director Jefferys as implementing and overseeing the issues violating RLUIPA and harming plaintiff.")). On these facts, an additional opportunity to amend is not warranted here.

### IV. SHOW CAUSE ORDER

The Amended Complaint in this action was filed on December 3, 2018 (Doc. 30), and Plaintiff has yet to effect service on Defendants Abdul Rahman Shahid and Sunni Ali Islam. Federal Rule of Civil Procedure 4(m) provides in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Court **ORDERS** Plaintiff to show good cause within fourteen (14) days of the date of this Report and Recommendation and Order why this action should not be dismissed as to Defendants Abdul Rahman Shahid and Sunni Ali Islam and why an extension of time to effect service should be allowed. The good cause showing must be supported with sworn affidavits.

### V. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the ODRC Defendants' Motion for Judgment on the Pleadings (Doc. 79) be **GRANTED**. Further, within 14 days of this Report and Recommendation and Order, Plaintiff is **ORDERED** to show cause why this case should not be dismissed with respect to Defendants Abdul Rahman Shahid and Sunni Ali Islam.

### VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: July 24, 2020 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE