IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN A. TOLLIVER,**

      **Plaintiff,**

  v.                                    Civil Action 2:16-cv-1020
                                          Judge Edmund A. Sargus
                                          Magistrate Judge Jolson

**WARDEN NOBLE, et al.,**

      **Defendants.**

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on the Motion for Summary Judgment by Defendant Investigators Sean Sabulsky and Matthew Crisler (the "Investigators") (Doc. 154), Motion for Summary Judgment by Defendant Sunni-Ali Islam (Doc. 156), Plaintiff's Motion to Strike (Doc. 160), and the Investigators' Motion to Strike (Doc. 169).  For the following reasons, it is **RECOMMENDED** that the Motions for Summary Judgment (Docs. 154, 156) be **GRANTED**. It is further **ORDERED** that Plaintiff's Motion to Strike (Doc. 160) be **DENIED** and that the Investigators' Motion to Strike (Doc. 169) be **GRANTED**.  Accordingly, the Clerk is **DIRECTED** to **STRIKE** Plaintiff's Motion Instanter: Plaintiff's Request for Leave to File Second Amended Complaint (Doc. 164); Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 165); Notice and Re-Filing of Plaintiff's Declaratory Judgment (Doc. 166); and Plaintiff's Motion for Declaratory Judgment (Doc. 167).

**I.    BACKGROUND**

The Court previously summarized the allegations from Plaintiff's Amended Complaint:

Plaintiff is an inmate at Grafton Correctional Institution, who has previously been incarcerated at London Correction Institution ("LoCI"), Madison Correctional Institution ("MaCI"), Belmont Correctional Institution ("BeCI"), Ross Correctional Institution ("RCI"), and Pickaway Correctional Institution ("PCI"). (Doc. 30, ¶ 7).

Defendants are numerous Ohio Department of Rehabilitation and Corrections ("ODRC") employees and contractors. (*Id.*, ¶¶ 8–11).

In 2012, ODRC transferred Plaintiff to MaCI. (*Id.*, ¶ 16). While at MaCI, Defendant Abdul Rahman Shahid was an ODRC contractor who served as an Islamic Services Provider. (*Id.*, ¶ 19). Defendant Sunni[-]Ali Islam served in the same role at PCI. (*Id.*). Plaintiff alleges that Defendants Shahid and Islam (the "Defendant Contractors") generally discriminated against Muslim inmates that were not supporters of the Nation of Islam. (*See, e.g.*, *id.*, ¶¶ 19–30). While at MaCI, Plaintiff allegedly complained to unidentified ODRC administrators and staff about the Defendant Contractors' behavior, which he asserts resulted in retaliation in the form of denied grievances, denied medical treatment, and limited program opportunities. (*Id.*, ¶ 35).

After several years at MaCI, in 2016, ODRC transferred Plaintiff to LoCI "for programming consistent with his parole board and re-entry plan." (*Id.*, ¶ 40). Defendant Shahid served as the Islamic Services Provider at LoCI as well. (*Id.*, ¶ 43). According to Plaintiff, unidentified ODRC administrators and employees employed Defendant Contractors knowing that it would suppress Muslim inmates' religious exercise and conserve resources for Christian inmates. (*Id.*, ¶ 50). And Plaintiff takes issue with ODRC's policies which he maintains do not adequately distinguish between different sects of Islam, resulting in the discriminatory actions of Defendant Contractors. (*Id.*, ¶¶ 54–57).

In September 2016, Defendants [Chrisler] and [Sabulsky] "shook down Plaintiff" and conducted a search of Plaintiff's belongings. (*Id.*, ¶ 88). Plaintiff subsequently reported to the investigators who placed him in segregated housing. (*Id.*, ¶ 90). After two weeks in "maximum security isolation," Defendant [Sabulsky] informed Plaintiff of the results of his investigation. (*Id.*, ¶ 90). The investigation began based on Defendant Shahid's allegation that Plaintiff was trying to radicalize other Muslim inmates; Defendant [Sabulsky] found no evidence to support that allegation. (*Id.*). Plaintiff alleges that unidentified Defendants subjected him to more than 50 days "in isolation as punishment for his use of the grievance process." (*Id.*, ¶ 94). Defendant Jefferies allegedly "personally approved this retaliatory action." (*Id.*).

The next month, unidentified Defendants allegedly arranged Plaintiff's transfer to PCI to impose "additional hardships" on Plaintiff, knowing that Defendant Islam worked at PCI and would continue to harass Plaintiff as Defendant Shahid had. (*Id.*, ¶ 99). Defendants Jefferies, Noble, and Taylor "and others had great sway over" Defendant Contractor's false reports and their effect on Plaintiff. (*Id.*, ¶ 102). Unidentified Defendants have allegedly denied him a reduction in his security level due to his history of successful grievances challenging his conditions of confinement and violations of civil rights. (*Id.*, ¶ 107).

> As part of their alleged retaliation against him, unidentified Defendants confiscated Plaintiff's legal materials and limited his access to other legal materials. (*Id.*, ¶¶ 115–19). Unidentified Defendants also failed to process his theft reports after Plaintiff lost other personal property. (*Id.*, ¶ 120). Further, unidentified Defendants disrupted his completion of various prison programming by transferring him between facilities. (*Id.*, ¶¶ 126–30).

(Doc. 86 at 1–3).

The Court previously adopted (Doc. 117) the Undersigned's recommendation (Doc. 86) that judgment on the pleadings be granted in favor of several ODRC Defendants. Accordingly, there are only four remaining Defendants in this action: Investigators Chrisler and Sabulsky, and Contractors Sunni-Ali Islam and Abdul Rahman Shahid. (Doc. 117 at 6). Three of those Defendants, the two Investigators and Defendant Islam, have moved for summary judgment. (Docs. 154, 156). Plaintiff has responded in opposition to each motion (Docs. 160, 161), and the Investigators replied (Doc. 168). In addition, Plaintiff has brought renewed motions to amend his complaint (Docs. 164, 165) and for declaratory judgment (Docs. 166, 167), which the Investigators have moved to strike (Doc. 169). These matters are briefed and ripe for consideration.

## II. STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004), *citing Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

### III. DISCUSSION

#### A. Investigators' Motion for Summary Judgment

The Investigators have moved for summary judgment with the understanding that the only remaining claim against them is retaliation. (Doc. 154 at 5–6). Indeed, the District Judge stated in a recent Opinion and Order that, "Plaintiff has remaining in this case a claim of retaliation against Defendant." (Doc. 149 at 1). And the Undersigned's previous Report and Recommendation (Doc. 86), adopted in full by the District Judge (Doc. 117), reasoned that Plaintiff's federal claims for monetary damages and state tort claims against the ODRC Defendants were barred by sovereign immunity (Doc. 86 at 5–6). It further reasoned that Plaintiff's Amended Complaint contained unspecific allegations about Defendants as a group—with one noted exception. The Amended Complaint did allege the personal involvement of Defendants Sabulsky and Crisler in retaliation against Plaintiff for his use of the grievance process. (Doc. 86 at 7; Doc. 30, ¶¶ 88–90).

Defendants argue that the Court should grant summary judgment in their favor because Plaintiff has failed to present evidence sufficient to establish a retaliation claim. (Doc. 154 at 13). Retaliation against a prisoner for exercising his First Amendment rights violates the Constitution.

*Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005), *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394.

First, "[t]he [Investigators] concede that [Plaintiff] engaged in protected conduct by filing grievances against the Imams and regarding ODRC's services to Muslim inmates." (Doc. 154 at 15). As Defendants recognize, "a prisoner has a First Amendment right to file grievances against prison officials," so long as he is not utilizing the grievance system to violate a legitimate prison regulation. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Defendants instead argue that there is insufficient evidence to establish the remaining two elements of the retaliation claim.

Plaintiff alleges two adverse actions that the Investigators took against him: first, they placed him in segregated housing while they investigated Imam Shahid's report; and next, they transferred him to a new prison following the investigation. (Doc. 30, ¶¶ 89, 91, 94, 98–99). While not disputing those actions, Defendants argue neither constitutes an adverse action in the prison context. (Doc. 154 at 15–18). The Undersigned agrees with regard to the prison transfer, but not with regard to segregated housing.

The prison transfer, because it involved no change in Plaintiff's security status, is presumptively not adverse. "As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (citing *Smith v. Yarrow*, 78 Fed. App'x 529, 543 (6th Cir. 2003)). Beyond a bare allegation that the transfer disrupted some of his

5

educational programming, Plaintiff has offered no support that this prison transfer was unusually adverse.

However, "[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse." *Thaddeus-X*, 175 F.3d at 396. The record demonstrates that Plaintiff went into segregated housing when the investigation began, on September 6, 2016. (Doc. 154-1, ¶¶ 9, 12; Doc. 154-2, ¶¶ 12; Doc. 154-3 at 1). Plaintiff remained in segregated housing until his transfer to PCI, on October 25, 2016. (Doc. 154-1, ¶ 14; Doc. 154-2, ¶ 16; Doc. 154-5 at 13–14). Because the evidence supports that Plaintiff was transferred to administrative segregation, and it is presumptively adverse, a genuine issue of material fact exists regarding the adverse action element.

Briefly, Plaintiff also says his belongings were returned to him following the investigation, without some of his legal materials and evidence for litigation, and this constitutes an adverse action. *See, e.g.,* (Doc. 161 at 3–4). Importantly, the record contradicts Plaintiff's allegation. Plaintiff signed an inmate property record upon his transfer to PCI and affirmed that the inventory of his belongings was "complete and accurate" and that "[a]ll of [his] personal property that is listed on th[e] inventory form [was] returned to [him] and [he] was offered the opportunity to inspect it before leaving the vault." (Doc. 154-4 at 1).

The Undersigned must now consider whether Plaintiff has submitted sufficient evidence to establish the final element of retaliation—that the adverse action (confining Plaintiff in segregated housing) was motivated, at least in part, by retaliation for his filing of grievances. Defendants maintain that Plaintiff "cannot even establish an inference that the Defendants were motivated by his complaints against an Imam that were made at another correctional institution more than two years prior." (Doc. 154 at 18–19). Further, they say they would have taken the same actions they

6

did in the absence of any filed grievances. (*Id.* at 20). The Undersigned agrees.

In establishing a causal connection, Plaintiff bears the initial burden "of establishing that his protected conduct was a motivating factor behind any harm[.]" *Thaddeus-X*, 175 F.3d at 399. "Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Id.* However, even if the Plaintiff carries this initial burden, "[i]f the defendant can show he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

Plaintiff has not submitted evidence to reasonably establish that his filing of grievances was a motivating factor behind his placement in segregated housing. Plaintiff offers only a bare allegation that the ORDC Defendants acted in retaliation and a timeline: Plaintiff filed grievances against Imams Shahid and Islam; Imam Shahid subsequently filed an incident report regarding Plaintiff; and the Investigators then investigated Imam Shahid's report and confined Plaintiff. While temporal proximity can provide some circumstantial support for a causal connection, *see, e.g., Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001), Plaintiff's grievances are not proximate to the alleged retaliation. The grievance which resulted in Imam Shahid being removed from services at MaCI was filed in January 2014 (Doc. 30, ¶ 36; Doc. 161 at 30–32), and when Plaintiff was allegedly retaliated against, in September 2016, it had been a year since he had filed any grievance (Doc. 154-6 at 5).

Plaintiff offers affidavits from other prisoners as supporting evidence, but those only repeat a general belief that Plaintiff experienced retaliation for his use of the grievance process, and that other Muslim prisoners have experienced negative consequences as a result of their use of the grievance process, without specific factual allegations. (Doc. 161 at 27–28). While the affidavit prepared by Romel Williams, a formerly incarcerated person, alleges similar retaliation

7

experienced firsthand, that affidavit only identifies Imam Shahid and "Defendant Taylor" (a dismissed Defendant) as responsible for retaliation—it makes no allegations about the Investigators. (*Id.* at 29).

Put simply, Plaintiff has not submitted sufficient evidence for a reasonable jury to find a causal connection between his use of the grievance process and his confinement in segregated housing. Even if he could carry that initial burden, Defendants have submitted evidence that they would have taken the same action regardless of whether Plaintiff had filed grievances. Defendant Sabulsky attests in his affidavit that he was following ODRC policy related to active investigations and staff-prisoner conflicts:

> As is standard procedure, [Plaintiff] was placed in a segregated "TPU" cell while the investigation on him was conducted and due to the staff/inmate conflict involving Imam Shahid. It is standard procedure for an inmate to remain in segregated housing when a nexus is completed due to a staff/inmate conflict until either the conflict is resolved or the inmate is transferred to another institution.

(Doc. 154-1, ¶ 12). Similarly, Defendant Crisler attests:

> As is standard procedure when there is a staff/inmate conflict, on September 6, 2016 [Plaintiff] was placed in a segregated cell while the investigation on him was conducted and due to the staff/inmate conflict involving Imam Shahid. It is standard procedure for an inmate to remain in segregated housing when a nexus transfer is completed due to a staff/inmate conflict until either the conflict is resolved or the inmate is transferred to another institution.

(Doc. 154-2, ¶12). Plaintiff has not meaningfully rebutted this testimony with his own evidence. Instead, the evidence shows that the Investigators were complying with their policy to investigate a report and manage staff-prisoner conflict. To the extent that Plaintiff maintains that Imam Shahid's report itself was made in retaliation for grievances, that is a claim against Imam Shahid and not the Investigators.

At base, there is insufficient evidence for Plaintiff to demonstrate a causal connection between his grievances and his assignment to segregated housing, which is an essential element of

8

a First Amendment retaliation claim. A reasonable jury could not therefore return a verdict for Plaintiff on the claim, and the Investigators are entitled to summary judgment. Accordingly, it is **RECOMMENDED** that the Motion for Summary Judgment (Doc. 154) be **GRANTED**.

Insofar as Plaintiff maintains that claims for denial of religious rights and access to the courts should persist against the Investigators (Doc. 161 at 3–4), that is inconsistent with the District Judge's statement that only the retaliation claim remains. (Doc. 149 at 1). Further, Plaintiff has not submitted sufficient evidence for a reasonable jury to find that the Investigators had any personal involvement in the alleged "statewide systematic denial of services and programming to Muslim inmates" (Doc. 161 at 2), nor that they acted with knowledge of his pending litigation for declaratory judgment and with motivation to deny his access to the courts.

### B. Defendant Sunni-Ali Islam's Motion for Summary Judgment

Defendant Islam filed his Motion for Summary Judgment (Doc. 156) on October 6, 2021. The Court had previously extended the dispositive motion deadline to September 20, 2021 (Doc. 149), so the motion was filed out of time. So, in addition to responding in opposition to the motion, Plaintiff has moved to strike it. (Doc. 160).

In essence, Defendant's motion for summary judgment, filed out of time, is also a request for modification of the scheduling order. Pursuant to Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Kirby v. Diversified Fabrications, Inc.*, No. 1:08-CV-83, 2010 WL 11520004 (E.D. Tenn. Mar. 26, 2010). The Court finds that good cause supports the modification of the scheduling order here. Namely, modification allows the claim for summary judgment to be resolved on its merits, and because Plaintiff has had the opportunity to substantively respond to the motion for summary judgment, he will not be prejudiced by such modification. Accordingly, Plaintiff's Motion to

9

Strike (Doc. 160) is **DENIED**, and the Court will consider Defendant Islam's Motion for Summary Judgment.

Defendant Islam moves for summary judgment on the basis that Plaintiff has not alleged his personal involvement in any of the alleged constitutional harms. (Doc. 156 at 2). Plaintiff makes clear that he has a vastly disparate view from Defendant regarding appropriate Islamic services. (Doc. 160 at 2–3). But that does not make Defendant responsible for what Plaintiff identifies as the crux of his claim for denial of religious rights: ODRC's policies and procedures, which fail to properly differentiate between different sects of Islam and furnish services accordingly. (Doc. 30, ¶¶ 54–57).

Further, the District Judge has indicated that Plaintiff's only remaining cognizable claim is for retaliation, and Plaintiff offers no evidence that Defendant Islam was involved in the alleged instance of retaliation. As discussed above, it is Defendant Shahid whom Plaintiff claims made a retaliatory report against him, which in turn lead to his assignment to segregated housing. Though Plaintiff has filed grievances against Defendant Islam in the past—as he did with Defendant Shahid—this alone does not serve as a basis to implicate Defendant Islam in the retaliation. In other words, Plaintiff has not put forth sufficient evidence for a reasonable jury to return a verdict against Defendant Islam for retaliation, or any other claims. Defendant Islam is therefore entitled to summary judgment and it is **RECOMMENDED** that his Motion for Summary Judgment (Doc. 156) be **GRANTED**.

C. **Investigators' Motion to Strike**

The Investigators move to strike four of Plaintiff's recent filings. (Doc. 169). Two of those filings (Docs. 164, 165) concern Plaintiff's renewed attempts to amend his complaint; the other two filings (Docs. 166, 167) concern Plaintiff's renewed attempts to obtain declaratory judgment.

Defendants argue that, because nothing substantive has changed since the Court's earlier refusals of these motions, the filings are redundant and should be stricken from the record. (Doc. 169 at 4–6). The Undersigned agrees.

The Undersigned has already considered, and denied, two requests by Plaintiff to file a second amended complaint. (Doc. 86 at 7–8; Doc. 112 at 3–5). In addition to finding the proposed amendments futile, the Undersigned noted that amendment would prejudice Defendants because the case was over four years old, and Plaintiff had a previous opportunity to amend. The District Judge agreed with the reasoning for both denials. (Doc. 117 at 6). Now, the case is over five years old, and three of the remaining four Defendants have brought motions for summary judgment. Amendment would unnecessarily delay this case and prejudice Defendants. Further, Plaintiff's proposed amendment does not meaningfully clarify his claims against the remaining Defendants and would therefore be futile. (*See* Doc. 165-1).

Plaintiff also previously moved for declaratory judgment. (Doc. 110). The Undersigned recommended denying such motion, on the grounds that the motion primarily concerned ODRC Defendants, whose dismissal was also being recommended. (Doc. 112 at 5). To the extent that the judgment concerned the Investigators, the Undersigned found the request premature, because there were issues of fact to be resolved at summary judgment or trial before such judgment was proper. (*Id.*). Now that summary judgment in favor of the Investigators is recommended, the Undersigned again finds that it would be improper to grant declaratory judgment concerning ODRC's practices and policies concerning religion without ODRC Defendants in this action.

Because these filings only seek to renew requests previously denied by the Court, without any substantive change in circumstances, the Undersigned **ORDERS** that the Investigators' Motion to Strike (Doc. 169) be **GRANTED**. Accordingly, the Clerk is **DIRECTED** to **STRIKE**

Plaintiff's Motion Instanter: Plaintiff's Request for Leave to File Second Amended Complaint (Doc. 164); Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 165); Notice and Re-Filing of Plaintiff's Declaratory Judgment (Doc. 166); and Plaintiff's Motion for Declaratory Judgment (Doc. 167).

IV. **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that the Motions for Summary Judgment (Docs. 154, 156) be **GRANTED**. It is further **ORDERED** that Plaintiff's Motion to Strike (Doc. 160) be **DENIED** and that the Investigators' Motion to Strike (Doc. 169) be **GRANTED**. Accordingly, the Clerk is **DIRECTED** to **STRIKE** Plaintiff's Motion Instanter: Plaintiff's Request for Leave to File Second Amended Complaint (Doc. 164); Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 165); Notice and Re-Filing of Plaintiff's Declaratory Judgment (Doc. 166); and Plaintiff's Motion for Declaratory Judgment (Doc. 167).

V. **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 14, 2022 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE