IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN A. TOLLIVER,
        **Plaintiff,**

v.                                Civil Action 2:16-cv-1020
                                      Judge Edmund A. Sargus, Jr.
                                      Magistrate Judge Kimberly A. Jolson

WARDEN NOBLE, et al.,
        **Defendants.**

**OPINION AND ORDER**

      This matter came before the Court on the Motion for Summary Judgment filed by Defendant Investigators Sean Sabulsky and Matthew Crisler (the "Investigators") (ECF No. 154), Motion for Summary Judgment by Defendant Sunni-Ali Islam (ECF No. 156), Plaintiff Kevin Tolliver's Motion to Strike (ECF No. 160), and the Investigators' Motion to Strike (ECF No. 169).  In a well-reasoned and legally correct decision, the Magistrate Judge recommended that the Motions for Summary Judgment be granted, that Plaintiff's Motion to Strike be denied, and, that the Investigators' Motion to Strike be granted.  (R&R and Order, ECF No. 172.)

      Plaintiff has since timely filed an Objection to the Report and Recommendation and Order. (Objection, ECF No. 174.)  Plaintiff has also filed a Request for Fourteen Days to Notify the Court of the Acquisition of Counsel (ECF No. 151), an Objection to the Magistrate Judge's Order Extending Dispositive Motions Deadline (ECF No. 153), a Motion Instanter (ECF No. 162), a Motion for Transportation to Trial (ECF No. 175), and a Request to have the Case Assigned to A Mediator (ECF No. 177).

**I.**

      Plaintiff Kevin A. Tolliver is a practicing and devout Muslim.  In approximately 2012 through 2014, while incarcerated at Madison Correctional Institution ("MaCI"), Mr. Tolliver had conflicts with

Imams Abdul Rahman Shahid and Sunni Ali Islam, independent contractors providing religious services to Muslim inmates for the Ohio Department of Rehabilitation ("ODRC"). Plaintiff adheres to a different sect of Islam than the contractors and disagreed with how the Imams provided services and interacted with Muslim inmates who disagreed with their religious views and practices.

Imam Shahid was replaced by another Muslim service provider for MaCI. Plaintiff alleges that his complaints about the Imams and ODRC's religious services have resulted in unconstitutional retaliatory actions taken against him by ODRC staff and contractors.

The Magistrate Judge set forth the relevant background in her Report and Recommendation and Order:

> The Court previously summarized the allegations from Plaintiff's Amended Complaint:
>
> Plaintiff is an inmate at Grafton Correctional Institution, who has previously been incarcerated at London Correction Institution ("LoCI"), Madison Correctional Institution ("MaCI"), Belmont Correctional Institution ("BeCI"), Ross Correctional Institution ("RCI"), and Pickaway Correctional Institution ("PCI"). (Doc. 30, ¶ 7). Defendants are numerous Ohio Department of Rehabilitation and Corrections ("ODRC") employees and contractors. (*Id.*, ¶¶ 8–11).
>
> In 2012, ODRC transferred Plaintiff to MaCI. (*Id.*, ¶ 16). While at MaCI, Defendant Abdul Rahman Shahid was an ODRC contractor who served as an Islamic Services Provider. (*Id.*, ¶ 19). Defendant Sunni[-]Ali Islam served in the same role at PCI. (*Id.*). Plaintiff alleges that Defendants Shahid and Islam (the "Defendant Contractors") generally discriminated against Muslim inmates that were not supporters of the Nation of Islam. (*See, e.g.*, *id.*, ¶¶ 19–30). While at MaCI, Plaintiff allegedly complained to unidentified ODRC administrators and staff about the Defendant Contractors' behavior, which he asserts resulted in retaliation in the form of denied grievances, denied medical treatment, and limited program opportunities. (*Id.*, ¶ 35).
>
> After several years at MaCI, in 2016, ODRC transferred Plaintiff to LoCI "for programming consistent with his parole board and re-entry plan." (*Id.*, ¶ 40). Defendant Shahid served as the Islamic Services Provider at LoCI as well. (*Id.*, ¶ 43). According to Plaintiff, unidentified ODRC administrators and employees employed Defendant Contractors knowing that it would suppress Muslim inmates' religious exercise and conserve resources for Christian inmates. (*Id.*, ¶ 50). And Plaintiff takes issue with ODRC's policies which he maintains do not adequately distinguish between different sects of Islam, resulting in the discriminatory actions of Defendant Contractors. (*Id.*, ¶¶ 54–57).
>
> In September 2016, Defendants [Chrisler] and [Sabulsky] "shook down Plaintiff" and conducted a search of Plaintiff's belongings. (*Id.*, ¶ 88). Plaintiff subsequently reported to the investigators who placed him in segregated housing. (*Id.*, ¶ 90). After two weeks in "maximum security isolation," Defendant [Sabulsky] informed Plaintiff of the results of his investigation. (*Id.*, ¶ 90). The investigation began based on Defendant Shahid's allegation that Plaintiff was trying to radicalize other Muslim inmates; Defendant [Sabulsky] found no evidence to support that allegation. (*Id.*). Plaintiff alleges that unidentified Defendants subjected him to more than 50 days "in isolation as punishment for his use of the grievance process." (*Id.*, ¶ 94). Defendant Jefferies allegedly "personally approved this retaliatory action." (*Id.*).

2

> The next month, unidentified Defendants allegedly arranged Plaintiff's transfer to PCI to impose "additional hardships" on Plaintiff, knowing that Defendant Islam worked at PCI and would continue to harass Plaintiff as Defendant Shahid had. (*Id.*, ¶ 99). Defendants Jefferies, Noble, and Taylor "and others had great sway over" Defendant Contractor's false reports and their effect on Plaintiff. (*Id.*, ¶ 102). Unidentified Defendants have allegedly denied him a reduction in his security level due to his history of successful grievances challenging his conditions of confinement and violations of civil rights. (*Id.*, ¶ 107).
>
> As part of their alleged retaliation against him, unidentified Defendants confiscated Plaintiff's legal materials and limited his access to other legal materials. (*Id.*, ¶¶ 115–19). Unidentified Defendants also failed to process his theft reports after Plaintiff lost other personal property. (*Id.*, ¶ 120). Further, unidentified Defendants disrupted his completion of various prison programming by transferring him between facilities. (*Id.*, ¶¶ 126–30).
>
> (Doc. 86 at 1–3).

(R&R and Order at 1–3, ECF No. 172.)

This Court previously adopted (ECF No. 117) the Magistrate Judge's recommendations (ECF No. 86) that judgment on the pleadings be granted in favor of several ODRC Defendants. Accordingly, there are only four remaining Defendants in this action: Investigators Chrisler and Sabulsky, and Contractors Sunni-Ali Islam and Abdul Rahman Shahid. (ECF No. 117 at 6). Retaliation is the only remaining claim against these defendants. The Investigators and Defendant Islam filed dispositive motions, which the Magistrate Judge recommends be granted. Defendant Shahid has not filed a dispositive motion.

## II.

This Court first notes that Plaintiff is proceeding without the assistance of counsel. A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Thus, this Court has made a reasonable attempt to read the pleadings of Plaintiff to state a valid claim on which he could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial." *Id*. (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)).

3

### III. REPORT AND RECOMMENDATION

This Court will first address Plaintiff's Objection as it relates to the Magistrate Judge's recommendation that the motion for summary judgment filed by the Investigators and Defendant Islam.

#### A. Standard

If a party objects within the allotted time to a Report and Recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts").

### B. The Investigators' Motion for Summary Judgment

In a recent Opinion and Order, this Court held that, "Plaintiff has remaining in this case a claim of retaliation against Defendant." (Doc. 149 at 1). And in her previous Report and Recommendation (ECF No. 86), adopted in full by this Court (ECF No. 117), the Magistrate Judge reasoned that Plaintiff's federal claims for monetary damages and state tort claims against the ODRC Defendants were barred by sovereign immunity. She further reasoned that Plaintiff's Amended Complaint contained unspecific allegations about Defendants as a group—with one noted exception. The Amended Complaint did allege the personal involvement of Defendants Sabulsky and Crisler in retaliation against Plaintiff for his use of the grievance process. (Doc. 86 at 7; Doc. 30, ¶¶ 88–90).

The Investigators moved for summary judgment on the claim for retaliation for exercising his First Amendment rights of using the grievance process. (Doc. 86 at 7; Doc. 30, ¶¶ 88–90). Retaliation against a prisoner for exercising his First Amendment rights violates the Constitution. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005), *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394.

In the Magistrate Judge's Report and Recommendation, she found, *inter alia*, that Plaintiff failed to meet the third element, *i.e.*, the adverse action was motivated at least in part by Plaintiff's protected conduct. In establishing a causal connection, Plaintiff bears the initial burden "of establishing that his protected conduct was a motivating factor behind any harm[.]" *Thaddeus-X*, 175 F.3d at 399. "Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Id.* However, even if the Plaintiff carries this initial burden, "[i]f the defendant can show he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

In his Objection, Plaintiff argues:

5

> Information provided in Discovery, and argued in plaintiff pleadings, indicates from the Investigators e-mails and other documents, a causal connection exists to the retaliation. These document indicate the investigator defendants knew there was a false report and instead of protecting the inmate decided to actively participate in the retaliation due to discovery of the inmate's immanent lawsuit against ODRC policies. The investigators thus had their own reasons for retaliation in conjunction with the desire to assist the contractor's attempts to "get rid of Tolliver."

(ECF No. 174 at 2.)  This Court disagrees.

Defendants correctly maintain that Plaintiff "cannot even establish an inference that the Defendants were motivated by his complaints against an Imam that were made at another correctional institution more than two years prior." (ECF No. 154 at 18–19).  Temporal proximity can provide support for a causal connection, *see, e.g., Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).  Here, however, Plaintiff's grievances are not proximate to the alleged retaliation.  The grievance which resulted in Imam Shahid's removed from services at MaCI was filed in January 2014 (Am. Compl. ¶ 36, ECF No. 30; Pl. Resp. in Opp. at 30–32, ECF No. 161), and when Plaintiff was allegedly retaliated against, in September 2016, it had been a year since he had filed any grievance (ECF No. 154-6 at 5).

Plaintiff offers affidavits from other prisoners as supporting evidence, but those only repeat a general belief that Plaintiff experienced retaliation for his use of the grievance process, and that other Muslim prisoners have experienced negative consequences as a result of their use of the grievance process, without specific factual allegations. (ECF No. 161 at 27–28). While the affidavit prepared by Romel Williams, a formerly incarcerated person, alleges similar retaliation experienced firsthand, that affidavit only identifies Imam Shahid and "Defendant Taylor" (a dismissed Defendant) as responsible for retaliation—it makes no allegations about the Investigators.  (*Id.* at 29).

Plaintiff has not submitted sufficient evidence for a reasonable jury to find a causal connection between his use of the grievance process and his confinement in segregated housing. Even if he could carry that initial burden, Defendants have submitted evidence that they would have taken the same action regardless of whether Plaintiff had filed grievances. The Investigators attest in their affidavits that they were following ODRC policy related to active investigations and staff-prisoner conflicts.  (ECF Nos. 154-1 ¶ 12; 164-2 ¶ 12.) The evidence shows that the Investigators were complying with their policy to investigate a report and manage

6

staff-prisoner conflict. To the extent that Plaintiff maintains that Imam Shahid's report itself was made in retaliation for grievances, that is a claim against Imam Shahid and not the Investigators.

This Court concludes, in its de novo review, that there is insufficient evidence for Plaintiff to demonstrate a causal connection between his grievances and his assignment to segregated housing, which is an essential element of a First Amendment retaliation claim. A reasonable jury could not therefore return a verdict for Plaintiff on the claim, and the Investigators are entitled to summary judgment. Accordingly, Plaintiff's Objection is **OVERRULED** (ECF No. 174) and the Investigator's Motion for Summary Judgment is **GRANTED** (ECF No. 154).

2. **Defendant Islam's Motion for Summary Judgment**

Defendant Islam moves for summary judgment on the basis that Plaintiff has not alleged his personal involvement in any of the alleged constitutional harms. (ECF No. 156 at 2). Plaintiff makes clear that he has a vastly disparate view from Defendant regarding appropriate Islamic services. The Magistrate Judge held that this fact did not make Defendant responsible for what Plaintiff identifies as the crux of his claim for denial of religious rights: ODRC's policies and procedures, which fail to properly differentiate between different sects of Islam and furnish services accordingly. (ECF No. 30, ¶¶ 54–57).

Plaintiff offers no evidence that Defendant Islam was involved in the alleged instance of retaliation, the only remaining claim. As discussed above, it is Defendant Shahid whom Plaintiff claims made a retaliatory report against him, which in turn lead to his assignment to segregated housing. Though Plaintiff has filed grievances against Defendant Islam in the past—as he did with Defendant Shahid—this alone does not serve as a basis to implicate Defendant Islam in the retaliation. Consequently, Plaintiff has not put forth sufficient evidence for a reasonable jury to return a verdict against Defendant Islam and he is entitled to summary judgment. Accordingly, the Court **OVERRULES** Plaintiff's Objection (ECF No. 174) and **GRANTS** Defendant Islam's Motion for Summary Judgment (ECF No. 156))

IV. **MAGISTRATE JUDGE'S ORDER**

Plaintiff moved to strike one of Defendant Islam's filings (ECF No. 160), which the Magistrate Judge denied (ECF No. 172). Plaintiff objects to the denial of his Motion to Strike. (ECF No. 174.)

A. **Standard**

7

When reviewing a Magistrate Judge's non-dispositive ruling, the district court applies a "clearly erroneous or contrary to law" standard of review. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

**B.      Motion to Strike Defendant Islam's Motion for Summary Judgment**

When Defendant Islam filed his Motion for Summary Judgment on October 6, 2021, the Court had previously extended the dispositive motion deadline to September 20, 2021, so the motion was filed out of time. Thus, in addition to responding in opposition to the motion, Plaintiff moved to strike it. (ECF No. 160.)

The Magistrate Judge held that, in essence, Defendant's motion for summary judgment, filed out of time, is also a request for modification of the scheduling order. Pursuant to Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Kirby v. Diversified Fabrications, Inc.*, No. 1:08-CV-83, 2010 WL 11520004 (E.D. Tenn. Mar. 26, 2010). The Magistrate Judge found that good cause supported the modification of the scheduling order. Namely, modification allows the claim for summary judgment to be resolved on its merits, and because Plaintiff has had the opportunity to substantively respond to the motion for summary judgment, he will not be prejudiced by such modification. This conclusion is correct; it is not clearly erroneous.

Thus, Plaintiff's Objection is **OVERRULED** (ECF No. 174), the Magistrate Judge's Order is **AFFIRMED AND ADOPTED** (ECF No. 172), and the Motion to Strike is **DENIED** (ECF No. 160).

## V.      NEW MOTIONS AND REQUESTS

Finally, the Court will address the motions filed by Plaintiff that have had no review by the Magistrate Judge:

(1)     Plaintiff's Request for Fourteen Days to Notify the Court of the Acquisition of Counsel, which is **GRANTED**, allowing Plaintiff to file his notice out of time. (ECF No. 151.)

(2)     Plaintiff's Motion Instanter, asking for an extension of time to filed hi Memorandum in Opposition to the Investigator's Motion for Summary Judgment, which is also **GRANTED**. (ECF No. 162.)

(3)     Objection to the Magistrate Judge's Order Extending Dispositive Motions Deadline (ECF No. 153), which is **OVERRULED**. Although Plaintiff indicates that he is dissatisfied with the Magistrate

8

Judge's scheduling order, it is this Court that set that schedule. The Court was well within its discretion to extend the deadlines it set.

(4) Motion in Opposition to Motion to Strike (ECF No. 173), which is **DENIED AS MOOT** because it is simply mislabeled as a motion when it is actually a memorandum in opposition and was already accepted as such.

(5) Motion for Transportation to Trial (ECF No. 175), Plaintiff's Motion for Video Attendance (ECF No. 178), Plaintiff's Motion *in Limine* (ECF No. 179) are all **DENIED AS MOOT** because there is no currently scheduled trial. If, however, the case is scheduled for trial, Plaintiff may inform the Court that he wished to have these three motions decided and they will be restored to this Court's active docket.

(5) Motion to Have Case Assigned to Mediator (ECF No. 177) is **DENIED WITHOUT PREJUDICE** pending the next status conference that will be scheduled by the Magistrate Judge. At that conference, the parties will discuss the next step for this case—either trial or mediation.

## VI.

For the reasons set forth above, the Court:

1. **GRANTS** Plaintiff's Request for Fourteen Days to Notify the Court of the Acquisition of Counsel (ECF No. 151);

2. **GRANTS** Plaintiff's Motion Instanter, asking for an extension of time to filed hi Memorandum in Opposition to the Investigator's Motion for Summary Judgment (ECF No. 162);

3 **DENIED AS MOOT** Plaintiff's Motion in Opposition to Motion to Strike (ECF No. 173),

4. **DENIES AS MOOT** Plaintiff Motion for Transportation to Trial (ECF No. 175);

5. **DENIES AS MOOT** Plaintiff's Motion for Video Attendance (ECF No. 178);

6. **DENIES AS MOOT** Plaintiff's Motion *in Limine* (ECF No. 179);

7. **DENIES WITHOUT PREJUDICE** Request to have the Case Assigned to A Mediator (ECF No. 177);

8. **OVERRULES** Plaintiff's Objections (ECF Nos. 153, 174);

9. **ADOPTS AND AFFIRMS** the Report and Recommendation and Order (ECF No. 172);

9

10. **GRANTS** the Motion for Summary Judgement of Defendant Investigators Sean Sabulsky and Matthew Crisler (ECF No. 154), and

11. **GRANTS** the Motion for Summary Judgment by Defendant Sunni-Ali Islam (ECF No. 156).

The Magistrate Judge will schedule a status conference forthwith.  This case remains open on this Court's docket with the only remaining claim of retaliation against the only remaining defendant, Abdul Rahman Shahid.

**IT IS SO ORDERED.**

**3/22/2022**          s/Edmund A. Sargus, Jr.
**DATE**               **EDMUND A. SARGUS, JR.**
                       **UNITED STATES DISTRICT JUDGE**